## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**TEVIN BREVARD,**

      Plaintiff,

v.                                         Civil Action No. 3:24cv377

**C. HESTER,** *et al.,*

      Defendants.

### MEMORANDUM OPINION

Tevin Brevard is a Virginia inmate who, at the time of the incidents in the particularized complaint, was an inmate at Newport News City Jail ("the Jail").[1]   Brevard names as defendants nurse practitioner ("NP") C. Hester, lieutenant colonel ("Colonel") Hayes, and "Nighttime Nurse Staff Jane Does." (*Id.*)  Brevard asserts that on March 27, 2024, he ate glass from a light fixture. (*Id.*)  Instead of taking him to a hospital, the defendants strapped him into a restraint chair for an indeterminate period.  (*Id.* at 2–3.)  Brevard makes the following claims:

| | |
|---|---|
| Claims A&B | NP Hester violated Brevard's Fourteenth Amendment right to receive adequate medical care when she refused to send him to a hospital after Brevard ingested glass. (*Id.* at 1.) |
| Claim C | Colonel Hayes violated Brevard's Fourteenth Amendment rights "by using the restraint chair as a punishment" for a sadistic purpose. (*Id.* at 2.) |
| Claim D | The Jail "Nighttime Nurse Staff Jane Does" violated Brevard's rights by failing to check on Brevard while he was confined in the restraint chair. (*Id.*) |

The matter is before the Court on Brevard's failure to serve the "Nighttime Nurse Staff Jane Does" and on the motion for summary judgment filed by the defendants NP Hester and Colonel Hayes.

---

[1] (ECF No. 25, at 1.)  The Court employs that pagination assigned by the CM/ECF docketing system.  The Court corrects the spelling, punctuation, and capitalization in the quotations from the parties' submissions.

## I. FAILURE TO SERVE NIGHTTIME NURSE STAFF JANE DOES

Under Federal Rule of Civil Procedure 4(m), the plaintiff had 90 days to serve the defendants.[2] Here, that period began on September 23, 2025. More than 90 days have elapsed, and the plaintiff has not served the "Nighttime Nurse Staff Jane Does." Accordingly, Brevard is directed within thirty (30) days of the date of entry hereof to show good cause why the action against the "Nighttime Nurse Staff Jane Does" should not be dismissed without prejudice.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the district court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). Rule 56 "therefore requires the nonmoving party to go beyond the pleadings" and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

---

[2] Rule 4(m) provides, in pertinent part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1871)) (emphasis in original). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448) (emphasis removed). In other words, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citation omitted); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their motion for summary judgment, NP Hester and Colonel Hayes submitted the affidavit of Colonel Hayes, (ECF No. 61-1); the affidavit of NP Hester, (ECF No. 61-2); the Newport News Sheriff's Office ("NNSO") policy regarding suicide attempts and the use of restraints, (ECF No. 61-3); an incident report and investigative summary, (ECF No. 61-4); medical notes regarding the time Brevard was in the restraint chair, (ECF No. 61-5); the Jail's shift log monitoring Brevard's time in the restraint chair, (ECF No. 61-6); a few Jail e-mails, (ECF No. 61-7); and Brevard's mental health records, (ECF No. 61-8).[3] Brevard has not submitted any admissible evidence in opposition to the Motion for Summary Judgment.[4]

---

[3] The motion by NP Hester and Colonel Hayes to seal Brevard's mental health records (ECF No. 56) will be granted.

[4] Neither Brevard's original complaint nor his particularized complaint is sworn to under penalty of perjury.

In light of the foregoing submissions, the following facts are established for purposes of the motion for summary judgment.

### III. SUMMARY OF RELEVANT FACTS

At all times relevant to this action, Brevard was detained in the Jail as a pretrial detainee. (ECF No. 22.) On March 26, 2024, deputies at the Jail observed Brevard chewing glass from a light fixture he had broken in the common area of Block 5G. (ECF No. 61-4, at 1.) Brevard was removed from the block, transported to booking, and written up on several charges. (*Id.*) Nurse Freeman examined Brevard and placed him in the restraint chair. (*Id.* at 3.) Brevard remained in the restraint chair, with periodic exercise breaks, until his release from the chair on April 2, 2024. (ECF No. 61-7, at 1.) Colonel Hayes was not involved in the decision to place Brevard in the restraint chair. (ECF No. 61-1 ¶ 4.)

NNSO's policy provides that if an inmate engages in a suicide attempt, and the inmate is not sent out for a medical assessment, the inmate shall be placed in the restraint chair for a minimum of eight hours. (ECF No. 61-3, at 5.) The policy further provides that the restraint chair may be used with the approval of a shift commander, under a variety of circumstances, including when an inmate destroys property or inflicts wounds or injuries upon himself. (*Id.* at 1.) Consistent with the NNSO policy, Brevard was checked by NNSO personnel every fifteen minutes, regularly monitored by medical personnel, and released from his restraints for leg exercise and arm range of motion every two hours. (*Id.* at 2–3; *see* ECF No. 61-6.) Additionally, every four hours, and per the policy, Brevard was released from the chair for fifteen minutes. (ECF No. 61-3, at 3; ECF No. 61-6.)

On the morning of March 27, 2024, NP Hester went to booking to assess Brevard, but he declined her assessment. (ECF No. 61-2 ¶ 3.) Brevard "reported that he ate, chewed and

4

swallowed a light bulb." (*Id.*) At midday on March 27, 2024 Nurse Hester assessed Brevard in the restraint chair. (*Id.* ¶ 4.) Brevard "complained that he had vomited blood after eating glass the prior evening. [He] denied stomach pain, or any injury to this mouth. He had bowel sounds in all four quadrants, but pain in his [right lower quadrant ("RLQ") of abdomen] on palpitation." (*Id.*) She "also checked the straps and found they were appropriately tightened." (*Id.*)

NP Hester reevaluated Brevard "later on March 27, and noted positive bowel sounds, no vomiting, and that the RLQ pain continue[d]." (*Id.* ¶ 5.) NP Hester could find no evidence to support Brevard's "claim that he had eaten glass. He had no laceration or blood in his mouth, or blood in his stool. [Brevard] wanted to be sent to the hospital and was mad that [NP Hester] did not him out." (*Id.* ¶ 6.)

"Thereafter, the nursing staff would check [him] every two hours and [NP Hester] would see him when on shift to assess his condition and take vitals." (*Id.* ¶ 7.) On March 28, 2024, NP Hester evaluated Brevard after his shower. (*Id.* ¶ 8.) Brevard reported no stomach pain or rectal bleeding. (*Id.*) On April 2, 2024, NP Hester again evaluated Brevard "and noted normal abdominal sounds in all four quadrants and that [Brevard] denied abdominal pain. He reported blood in his stool; however, [NP Hester] noted that he had hemorrhoids and sitting in the restraint chair was making that worse." (*Id.* ¶ 9.)

Brevard was released from the chair on April 2, 2024. (ECF No. 61-7, at 1.) NP Hester "did not observe any medical problems after the alleged incident." (ECF No. 61-2 ¶ 10.)

## IV. ANALYSIS

### A. Lack of Personal Participation by Colonel Hayes

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred

5

by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). Furthermore, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must [demonstrate] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (noting that the doctrine of *respondeat superior* is inapplicable to § 1983 actions). Accordingly, the plaintiff must affirmatively show "that the official charged acted *personally* in the deprivation of the plaintiff[']s rights." *Vinnedge*, 550 F.2d at 928 (emphasis added).

Here, in Claim C, Brevard contends that Colonel Hayes violated his rights by employing the restraint chair as a means of sadistic punishment. Brevard, however, fails to demonstrate that Colonel Hayes had any involvement in the use of the restraint chair with respect to Brevard. Accordingly, Claim C will be dismissed.

### B. Brevard fails to demonstrate NP Hester violated his rights

Because Brevard was a pretrial detainee at the time of the events in the particularized complaint, the Fourteenth Amendment, not the Eighth Amendment, governs his claims. *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)). The Due Process Clause of the Fourteenth Amendment "protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 608–09 (4th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). A pretrial detainee may establish a "claim under the Fourteenth Amendment, based on a purely objective standard, for prison officials' deliberate indifference to excessive risks of harm." *Short*, 87 F.4th at 604–05. Specifically, pretrial detainees must demonstrate:

6

(1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) *as a result, the detainee was harmed.*

*Id.* at 611 (emphasis added). Under this standard, a pretrial detainee need not show "that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.* Instead, it is sufficient to show that the defendant's action or inaction was "objectively unreasonable." *Id.* (citing *Kingsley*, 576 U.S. at 397.

Here, Brevard contends that NP Hester acted with deliberate indifference to the fact that he had eaten glass from a light bulb. He contends that NP Hester should have sent him to a hospital, rather than condoning the continued use of a restraint chair against his person. While the evidence mustered to defeat the first three components of this deliberate indifference is questionable, there is no evidence that because of NP Hester's decision, Brevard sustained any injury. Accordingly, Claims A and B will be dismissed.

## V. CONCLUSION

Brevard is directed within thirty (30) days of the date of entry hereof to show good cause why the action against "Nighttime Nurse Staff Jane Does" should not be dismissed without prejudice. The motion to seal Exhibit 8 (ECF No. 56) will be granted. The motion for summary judgment (ECF No. 60) will be granted. Claims A, B, and C, against NP Hester and Colonel Hayes will be dismissed.

An appropriate Order shall accompany this Memorandum Opinion.

Date: 9 Jul 2026
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge